CARL EMIL MOLLER, and JANE ELIZABETH BLOOMQUIST, as Administratrix, etc., of CHARLES A. BLOOMQUIST, Deceased, Respondents, *v.* CLARE A. PICKARD and ROLLIN K. MASON, Appellants.

Second Department, May 20, 1921.

Judgments — conclusiveness and effect — interlocutory judgment establishing right to accounting is binding on referee appointed to state account — attorney and client — purchase by attorney and another with consent of clients who were stockholders of controlling interest in corporation while acting for them — attorney entitled to compensation for service rendered to corporation — he who asks equity must do equity.

A referee appointed to take and state accounts of the defendants as provided in the interlocutory judgment establishing the right of plaintiffs to an accounting is bound to deal with the case upon the basis of the finding upon which the interlocutory judgment rested.

In an action for an accounting it appeared that one of the defendants, an attorney at law, was engaged by the plaintiffs, who owned a minority interest in a corporation, to render professional aid and that after an investigation he advised that the plaintiffs purchase the controlling interest; that later with the consent of the plaintiffs he induced his codefendant to go into the corporation; that the controlling interest was purchased and held in the name of the two defendants; that the defendants through their management placed the corporation on a firm financial basis; that thereafter the plaintiffs, claiming that the purchase of the stock was for their benefit, demanded that the defendants turn over said stock to them and account for their stewardship; and that the transfer of the stock to the defendants was made with the full knowledge and consent of the plaintiffs.

*Held*, that the defendants were entitled on the accounting to a reasonable compensation for their services rendered in behalf of the corporation during the period of time which they served it prior to the demand by

the plaintiffs, and for a reasonable time thereafter for them to have complied with it.

Since the plaintiffs are asking that the acts of the defendants performed with their consent shall be deemed acts for their benefit, they should, as a condition of being granted that equity, be required to concede to the defendants the equity of allowing them the fair value of their work which inured to the advantage of the plaintiffs.

APPEAL by the defendants, Clare A. Pickard and another, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Chautauqua on the 9th day of September, 1920, on the report of a referee appointed to take and state the accounts of the defendants.

*Frank H. Mott* [*C. A. Pickard* and *H. V. N. Bodine* with him on the brief], for the appellants.

*Robert H. Jackson* [*Benjamin S. Dean* with him on the brief], for the respondents.

MILLS, J.:

This is an appeal to the Appellate Division of the Fourth Department (transferred here for argument and decision) from a final judgment entered upon the report of a referee to state an account, appointed pursuant to a prior interlocutory judgment establishing the right· of plaintiffs to an accounting by defendants, which interlocutory judgment had been, on May 4, 1920, unanimously affirmed by that Appellate Division upon the appeal of the defendants. (See 192 App. Div. 943, 949; 195 id. 919, 921; 196 id. 919.)

The interlocutory judgment was entered upon the report of the Hon. Pardon C. Williams as referee, dated September 1, 1919. His decision established the following material facts:

The Monarch Stationery & Paper Company, Inc., was a corporation in the city of Jamestown, N. Y., dealing in sta-. tionery supplies. In and prior to 1915 the plaintiffs and one Rogers owned all, or nearly all, of its stock, Rogers owning or controlling a bare majority interest. The concern was not prosperous and difficulties had arisen between the parties. In that situation plaintiffs applied to defendant Pickard, an attorney, for professional aid. After investigation he advised

that the proper thing to do was to buy out the Rogers interest which, Rogers having then lately died, was held by his estate. Defendant Mason was somehow induced to come into the matter, and finally, on March 28, 1916, an agreement was executed by both plaintiffs authorizing the transfer by the Rogers estate to Mason " and such other parties as he may designate or request" of all the stock owned by it and some other shares, being fifty-one shares and all except the fifty shares owned by the plaintiffs, and, of course, being the majority interest. This consent or waiver was technically necessary, because the by-laws of the corporation prohibited the transfer of any of its stock without the written consent of every other stockholder. Thereafter the defendants purchased and had transferred to themselves all of those other fifty-one shares of the stock. A meeting of the directors was held at once, at which the officers who had respresented the Rogers interest all resigned and the defendants were elected in their places — all with the knowledge and participation of the plaintiffs, as Referee Williams subsequently found. Defendants at once assumed the conduct of the corporation and its business, and made a very great success of it. Indeed, the last referee, as a final summary upon this branch of the case, found that when the defendants assumed control of the corporation it was insolvent and its capital stock had no market value; and that under their management the corporation had· become solvent and prosperous, having a net value of at least $20,000. Nevertheless, after a time difficulties arose between the parties herein, and on May 11, 1917, the plaintiffs first formally demanded that defendants turn over to them their stock, apparently upon the theory that their purchase had been made for the plaintiffs' benefit. That demand was not complied with, and this action was commenced on July 11, 1917, upon the same theory or contention.

Referee Williams found, in effect, that defendant Pickard was acting as plaintiffs' attorney, and that Mason well knew that relationship; and that, therefore, the plaintiffs were entitled to have had their demand granted — in other words, to have the defendants held as trustees of the stock for the plaintiffs' benefit. He failed to find that either defendant was guilty of any actual fraud, and distinctly refused to find

any such fact. His decision was evidently to the effect that, in view of the relation of Pickard to the plaintiffs as their attorney and of Mason's knowledge thereof, the plaintiffs had the right to elect to treat the purchase made by defendants of the subject-matter of Pickard's professional employment as the plaintiffs' own. Upon that basis he decided, and the interlocutory judgment adjudged, that defendants must account to plaintiffs for all that they had received by said purchase originally or thereafter, and turn over to the plaintiffs all such property and all income therefrom " upon payment by plaintiffs of such sums, if any, as may be found due defendants for purchase price or other proper charges." After the affirmance of that judgment, the order of reference was entered, directing the referee, Mr. Thrasher, " to take and state the accounts of the defendants * * * as provided in the interlocutory judgment." That referee's decision and report disallowed to the defendants the salaries which they had received as officers of the corporation, aggregating $5,600, and directed them to pay that sum over to the plaintiffs; and also disallowed to the defendants any compensation whatever for their services, although he found as above stated in effect that their services had been very valuable. Upon the accounting before him, defendants claimed not only to be allowed to retain those salaries, but also to be awarded $10,000 as additional compensation for their services. At the conclusion of the trial before the last referee, the parties stipulated to leave to him the determination of the value of those services, that is, without bringing in any expert testimony, if he should determine as matter of law that defendants were entitled to any compensation. His opinion indicates that he refused to allow either defendant any compensation because he concluded that each fell within the condemnation of the long line of authorities, many of which he cited, to the effect that, where an attorney has acted in any substantial manner against the interests of his client and to promote his own personal interest, he is entitled to no compensation, although his services may really have been of great value to the client. The foundation of this doctrine doubtless is the ancient maxim that one cannot serve two masters. The referee held even that the rule went so far as to deny to Pickard compensation for his initial services,

meaning as I understand those rendered prior to his refusal to turn the stock over to plaintiffs upon their demand. He based this conclusion upon an extract which he quoted from *Trist* v. *Child* (88 U. S. 441), viz.: " We have said that for professional services in this connection a just compensation may be recovered. But where they are blended and confused with those which are forbidden, the whole is a unit and indivisible. That which is bad destroys that which is good, and they perish together." I cannot agree that the rule of that extract applies to this case, as I can perceive no difficulty in separating the services of the defendants prior to their refusal of plaintiffs' written demand from those after that date. Obviously they were not so " blended and confused " as that the " bad " (those following the refusal) destroy " that which is good " (those before), " and they perish together." There can, I conclude upon both records, be no doubt that both defendants took the Rogers stock in their individual names originally and assumed the control of the corporation, which the ownership of that stock nominally gave, with the full knowledge and consent of the plaintiffs.

Respondents' counsel calls attention to the fact that in the above recited waiver, which defendant Pickard drew, only the name of defendant Mason as a proposed purchaser is given, and not at all that of Pickard. He urges that omission as evidence that Pickard, the lawyer, was acting in bad faith towards his clients, at least leaving them to suppose that he had no personal interest in the matter, but to aid them had procured Mason, who was not a lawyer, to finance the matter so as to give the plaintiffs a chance to save their investment. However that may be, it is certain that right away thereafter, when the stock was actually transferred, the plaintiffs became advised that some of it was transferred to Pickard personally. Had it all been transferred to Mason alone, and Pickard really had no personal interest in that stock, plaintiffs would have been without any remedy, as it is only because some of it was transferred to Pickard personally that they succeeded in obtaining the interlocutory judgment.

While, no doubt, the general rule is as stated by the learned referee in his opinion, where bad faith on the part of the

attorney throughout the transaction is proven; yet·I think that that drastic rule should not be applied here. The finding of Referee Williams, sustained on the prior appeal, to the effect that the original taking by Pickard of a part of the stock in his own name was effected with the knowledge and consent of the plaintiffs, was binding upon the last referee on the accounting. He was acting under the warrant and limitations of that judgment, and was bound to deal with the case upon the basis of the findings upon which that judgment rested. Upon that basis I think that the case before him was one where the maxim " He who asks equity must do equity " applied. The plaintiffs are asking the equity that the acts of the defendants performed with their consent shall be deemed acts for their benefit, and they should, as a condition of being granted that equity, be required to concede to the defendants the equity of allowing them the fair value of their work which thus will be made to inure to the very great advantage of the plaintiffs. When the defendants took hold of the matter, the investment of the plaintiffs in the corporation was practically a dead loss, as the corporation was substantially bankrupt. Defendants' efforts which deservedly have received the commendation of both referees saved the property and made plaintiffs' original shares worth about $200 each from a mere nominal value. Common justice would seem to require that, if plaintiffs are permitted to treat defendants as merely their agents and so to avail themselves of the fruits of their labors, they, the plaintiffs, should be required to pay them the fair value of their services. It seems to me, moreover, that that is the real intent of·the interlocutory judgment in its provision that defendants are to be allowed not only the purchase price which they paid for the stock, but " other proper charges." It is not apparent what else could have been meant by that phrase. The decision·of the referee allowing the defendants nothing at all for their very valuable services offends one's natural sense of equity and justice. Of course, we are bound here by the interlocutory judgment which, having been affirmed upon the prior appeal, is not before us for review; and perhaps it may be inept for me to say that the record is such that, had Referee Williams decided contrariwise to what he did upon the vital issue whether or not the defendants originally

purchased with the full consent of the plaintiffs that the purchase should be for defendants' sole benefit, his decision would have been sustained upon appeal.   Indeed, it may be noted that upon that trial the evidence showed and the referee found that in the inception of the matter the plaintiffs even asked Pickard to become personally interested in the purchase of the Rogers stock, but that he then refused.   It also established that in the preliminary agreement of January 10, 1916, authorizing or inviting Mason to purchase, the plaintiffs declared that they " are anxious to induce the purchase " of the Rogers stock " by some satisfactory person," and agreed that if Mason purchased he should have full control of the corporation and its business.   It is not apparent why such an agreement between the very parties should not have fully expressed their real meaning.   However all this may be, I am convinced that defendants should be allowed a fair compensation for their services up to the time of the written demand upon them, and for a reasonable time thereafter for them to have complied with it.

Respondents' counsel contends that presumptively at the most the fair value of defendants' services did not exceed the salaries which they, in effect, paid themselves, and that the claim of $10,000 additional is extreme.   That may be true in both respects.   It is to be regretted that the learned referee did not fix the value of those services, especially as all parties had exhibited such confidence in him as to stipulate that he might determine that value upon his own judgment without the aid of expert testimony.   Had he done so we might modify by allowing the defendants the amounts so determined by him.

Under all the circumstances I think that we may well give to the plaintiffs the option of having defendants' compensation fixed here at the amount of their salaries.

I advise, therefore, that the judgment appealed from be reversed and a new trial of the accounting issues granted before the court at Special Term, or a new referee to be there appointed, with costs to abide the event, unless plaintiffs shall stipulate to permit that judgment to be modified so as to allow defendants to retain the salaries which they have received, and that, in the event of such stipulation being made

within twenty days, the judgment as so modified be affirmed, without costs.

Blackmar, P. J., Rich, Putnam and Jaycox, JJ., concur.

Judgment reversed and new trial of the accounting issues granted before the court at Special Term, or a new referee to be there appointed, with costs to abide the event, unless plaintiffs shall stipulate to permit that judgment to be modified so as to allow defendants to retain the salaries which they have received, and that, in the event of such stipulation being made within twenty days, the judgment as so modified is unanimously affirmed, without costs.